20-3340 from the District of Western Missouri, Alissa's Flowers v. State Farm Fire & Casualty Co. All right, thank you. I see counsel is present online, welcome, and Ms. Stout, you may proceed when you're ready. May it please the court, my name is Courtney Stout, and I'm with the law firm of Williams Dirk Stamrin, and we represent Alissa's Flowers. Alissa's Flowers is a small business that was shut down during the government shutdowns due to COVID-19. Alissa's Flowers brought her case in the district court alleging she overpaid her commercial liability premiums. The district court effectively conflated rates and premiums and dismissed Alissa's Flowers complaint. The district court erred for three reasons. First, Alissa's Flowers does not challenge rates. Alissa's Flowers challenges premiums. Second, commercial liability premiums are not subject to review by the Department of Insurance. And third, this case is premature at this time. Before I begin my argument, I would like to say, to your honors, we are simply asking the court to hold State Farm accountable to the policy that it signed, and the clear language in the policy that provides premiums may be adjusted if factors change during the policy period. Counsel, what does the language say, is it may or will? Your honor, language states that when the factors used to calculate premiums change, we may adjust the premium in accordance. Well, who has the discretion, is there a case law, this may be a bit of a tangent, suggesting that they're required to do so, or is that optional? Your honor, so this is a case of first impression before you, so there's not a case directly at this point. But I will point you to three different places in the policy that states that if there's a change in factors, the premium can be adjusted. And if we can... Again, I don't want to belabor the point, but it's optional, is that fair to say? Your honor, the policy says we may adjust the premium. We do not construe that as optional. We believe a reasonable insured, reading that policy in those three different... I understand, okay, okay, don't want to belabor that, I think there are more difficult issues in the case, so... Okay, I'll continue my argument. First, this question is premature. Indeed, as your honor and I were just talking, there is confusion here. There's been no discovery whatsoever in this case, and there has been no record evidence submitted with any of the briefs before your honors or before the district court. The district court effectively turned this motion to dismiss into a summary judgment by saying rates are the same as premiums without any evidence. Indeed, your honor, this is impossible to know without evidence on this factor. Second, Elyssa's Flowers challenges premiums, not rates. Premiums are a broad category, and there are a number of factors that go into calculate premiums. Just one of those is rates. We can think of it like a math equation. Premium equals rate times X, Y, Z factors. Your honors, I'm calling it X, Y, Z factors because while we know some of these factors, we do not have the benefit of knowing all of the factors or the weights that are given to this factor because there has not been discovery. What we do know is that we do not allege that premium has changed. We allege these X, Y, Z factors as a result of business shutdowns and our client's business being shut down for two months that these things changed. These include things like decreased foot traffic, lowered monthly sales because the business was closed, no slip and falls. In fact, while we do not know all of these factors or their weights, we can look to several sources to determine what some of these factors are. Those sources are state statutes, the policy language itself, and the amicus brief. Those sources state that these factors include change in business operation, scope of premises covered, customer relationships with other state farm entities. This is often referred to as bundling, monthly fees, policy reinstatement fees, and discounts that are provided in the policy's own declarations. Again, these are just a few of the factors that we know of in this case to go back to allow for discovery to determine what the calculation is to calculate rates. I like to sometimes... Counsel, I'm really interested, subject to the senior judge's views, on the issue of recalling it, whether or not the court has, or the director of insurance has jurisdiction here. To me, that's the really complicated issue, unless my colleagues disagree. I would really appreciate you hitting that because I think it's a complicated statutory scheme and I would appreciate your assistance in trying to work through that. Absolutely, your honor. So we can look to section 379.321 subsection 6 of the Missouri statute for this position. That statute is a specific statute and it specifically discusses commercial liability insurance policies. And which section is that, counsel? Subsection 6. Okay, thank you. Of course. So that section states, commercial insurance policies, rates, rating plans, and manuals are filed with the Department of Insurance only for informational purposes. They are not to be reviewed or approved by the Department of Insurance. Now, as argued in the briefing by State Farm, and I anticipate my opposing counsel will bring up today, there are other general statutes, and my opposing counsel will argue those contradict section 379.321. However, those general statutes apply to all types of insurance. Home insurance, car insurance, etc. The case law, as your honors are aware, the case law states that when you have a general statute and a specific statute on the same issue, the specific statute controls. So in this case, section 379.321, subsection 6 is a specific statute issue and controls here. And on that note, your honors, if I could address the district court's, the only case that the district court relied on is a case called ASAP. ASAP is a Florida state court case from the appellate court. That case is the only case the district court relied on and is distinguishable from our case here for three reasons. First, this is under Florida law, not Missouri. As your honor pointed out, this case is heavily statute based. Therefore, any reliance on a Florida statute is not analogous. Second. Counsel, do you agree that 379.348 is the key exhaustion statute here or am I misreading that? Your honor, that statute states that insurance policy, general insurance policies have to be subject to administrative exhaustion. However. Isn't the question whether or not that applies to this policy? Oh, I apologize. Okay. So and it says any individual, et cetera, et cetera, agreed by any rate charge. Why isn't that broad enough to cover the policy in this case? That seems pretty broad language there. Sure, your honor. So I have a twofold response to that. First, as you said, it challenges rates. We are not challenging rates in this case. Let's assume I disagree with you and that you are challenging a rate. Do you have a second argument? Yes, your honor. Even if you are challenging rates, section 379.321 subsection six specifically takes commercial policies away from the purview of the Department of Insurance. And case law says that when you have a specific statute of 379.321 compared to a general, which is 379.348, the specific statute controls. So in this case, even if your honor found that we were challenging rates, that does not come under the purview of 379.348 because 379.321 explicitly takes that away. Your honor, I only have about one minute. I'd like to reserve the rest of my time for rebuttal, but I do just want to point out there's three places in the policy where it contemplates a premium adjustment. Those places do not state, as State Farm will argue, premiums can only go up, never go down. In those places, they say premiums may be adjusted. A reasonable insured interpreting this contract would believe that the insured has a duty to pay more premium if those XYZ factors increase. But at the same time, the insured is entitled to a premium credit or a premium refund if those factors fall. And at this time, your honors, I'd like to reserve the remainder of my time for rebuttal if there are no more questions. Okay, thank you, Ms. Stile. Mr. Bennett? Thank you, your honor. It's Jim Bennett for State Farm and may it please the court, I'll focus in on our perspective on the questions about the statutory exhaustion scheme. We do agree that 348 is the key exhaustion provision and it applies to any insured who's aggrieved in any policy. There is no carve-out whatsoever for a particular form of policy. That's a strange statute though, isn't it? I mean, it specifically identifies certain sorts of coverage. Is that right or am I misreading it? Are we talking about 348 or 321, your honor? I think I'm talking about 321, which is referenced in 348, I think. Is that correct? 321 is within the range of statutes that are referenced. So I'll take that in pieces. 348 applies to any corporation which elicits aggrieved by a rate charge by unlimited insurers and about how those rules have been applied. So it seems to apply to insurers, not policies, doesn't it? Well, the policies would be what the aggrieving part would be. So we have a rating plan, a rate, an underwriting rule followed by insurers and then the aggrievement would come on how that was applied with respect to the insurance afforded him and that's in 348 also. So you have to have an insurer, then you have to have a rate plan and then you have to have a person who's aggrieved by how that was applied and so that, I think, would encompass a policy. And then, of course, the rules that this procedure exists to allow grievances to be aired include references to premiums and policies and rates used to calculate those. So 348 and 346 set out the exhaustion, both substantive rights and then also the procedure that's followed. And so they have no limitations whatsoever on what types of policies and what types of rate issues can be decided. How does 316 play into that? I mean, I'm having trouble with all these different statutes. I mean, it references insurance companies dot, dot, dot, which transact fire and allied lines marine and inland marine insurance. And then it says except and subsection 3 says commercial property and commercial casualty insurance. Well, the except goes to the subparts, your honor. I'm sorry. Yeah, how do you interpret that? Sure. If you look at that, if you have the statute in front of you, you see that they talk about it applies to all insurance companies and then there's an exception colon and then the exceptions are not, it's Missouri statutory drafting that may be throwing us off. But the exceptions are those five little subparts that come right below it. And so that is not, section three actually goes out to be its own independent provision and it's not in that except colon section. Why isn't that independent provision then that is separate from section one? The independent provision that says that all of these apply and then they note that we're also, which takes us to 321 and 321 does not exempt us from any of these requirements about excessive rates. And in fact, it conclusively establishes that the director has the power to impose excessive rates. So 316.1 says that we're covered by all of these laws, which we undoubtedly are. Three makes a note that we're covered and refers us to 321. And what 321 does is talk about two different types of filing mechanisms. The first is that all these, some insurers have to apply their rates, put their rates in and get approval before they're used. And then if you go to what they're talking about in six, we're not exempt from filing our rates and we're not exempt from review from the rates. The only thing we're exempt from is that when we file our rates, they don't have to approve those as a condition of using them in the first place. And that's the important language in 6.1 where it says we file them for informational purposes and they're not reviewed or approved as a condition of their use. Meaning they don't, some people have to file these, get approval, and then they get to use them. We get to file them, they review them, but we can use them in the interim and they can come back to us and do come back to us saying we got your stop, we've got questions. But most importantly for the present case is that very section in subsection 10 says nothing in this subsection limits the director's authority over excessive rates. So even in this provision that talks about how we can file our rates, they're going to get reviewed, but they don't review or approve them as a condition of their use in the first instance. That's subsection 1 of section 6. Subsection 10 of that exact same section says nothing in there limits the director's authority over excessive rates. So if you go forward, what we see is the difference between our policies and say a car policy is the car policy gets filed, the rates get filed, they get reviewed, and then they get approved before they can be used. For us what happens is we file those and we can use those without explicit pre-approval, but the statute in no way takes away the director's authority to review those rates. So not knowing your business counsel, I mean what is the policy reason for the state's distinction between the different sorts of policies? I think because of the complexity of the casualty business, you know there's so many different, think of this variation in business size, you know, I mean you can be writing policies with unbelievably complex issues facing a fireworks business or extremely large business or other things like that and you're contrasting it with a more basic homeowners policy or a car policy and I think there's a lot of flexibility in the statute for these casualty policies because you know you could write one that covers huge product liability claims depending on the business and things like that and so they allow us to create those rating systems, submit those to them, they get a chance to review them but they don't hold up the issuance of the policy and the payment of the premium in the meantime. But they absolutely do have the right to review them. It only says that they don't review or approve those as a condition of us using them in the interim but they absolutely have the right to say your rating system is unreasonable because that's explicitly preserved and also we're subject to the general statutory provisions as well that give these rights to have these things reviewed. So where we are with these types of policies is we're covered by all the laws, the director has jurisdiction over us, the only material distinction is that they pre-review auto policies homeowners. For us, we get them and they allow us to use them before they approve them but they still have the right to review them and then they explicitly, absolutely in subsection 379.321.6 subpart 10 have authority over whether they're excessive rates or not. And so when you look at Judge Wines' decision, he thought that that subsection 10 was important because even if you accept, which he didn't accept and we don't accept that we're not covered by the general restriction on excessive rates, he points out that in 321.6, even that has a specific section in 10 that says they still can review us for excessive rates. So we think we're doubly subject to the director's decisions on rates. I just think there's no way that Missouri, and if you look at your court Saunders' decision that goes through all of the complexity of Missouri insurance rates and talks about why it's important for the director who has all of the things to care about, like are the insurance companies going to be solvent, are the premiums too low, are the premiums too high, who's obligated to act in the public interest as well, to look at all of these factors for rates and to make a decision on whether they're excessive, inadequate, or discriminatory, meaning they treat people differently based on improper The first is the one we've been talking about where 379.321 explicitly says that he has the rights over excessive rates. Then if you look at the general statutory provisions that do not carve us out, that apply to any statutory provision, I mean any insurance policy at all, there's a provision that I think is really important which is 379.3561 which says that all insurers must charge premiums in compliance with the provisions of chapter 379. All insurers, not exempting us in any way. Then 379.318 again says that rates used to calculate premiums is how they define rates cannot be excessive. And then it says of course as the court's already pointed out that any person agreed by the rate can complain about it to us and then there's a hearing process and remedies provided. So we would say that Judge Wines' decision is doubly correct. The first reason being that the specific provision about how we file our rates specifically says that those can be reviewed for excessiveness. The second is the general provisions in no way say all insurers except casualty. They say all insurers and so we're and that's what we think he was correct to conclude that. And a lot of the complexity of all of this is a good reason why the federal courts are often hesitant to get involved in complex state insurance issues because the role of the director, they got a lot of moving parts and a lot of factors to consider. And here especially with how to deal with COVID in the casualty insurance world and what that means for rates is a classic item for the Department of Insurance versus a federal court that doesn't often see these issues. So we're covered by this statute and there's a process to exhaust and Missouri law is clear that once you have a process to exhaust you have to exhaust it and in fact the case that we cite McLean says that not only do you have to exhaust your remedy then would be an appeal under the APA and that that's an exclusive remedy as well. This is not the type of thing that the federal courts we think would be involved in and that's the whole reason behind the exhaustion of remedy. If you turn to their policy-based arguments I do believe that the court was pointing out you know valid facts about our policy but there is no policy provision at all that says that we will reassess these or reduce them based on any of those factors. There are three policy provisions that they talk about and the first is if they have a change in business operation from what's shown in the declaration on the policy period itself a page itself we may require an additional premium. It certainly never says that we'll reduce it and it requires there to be a change in their business like go from a flower shop to a firework facility or something like that that's not in the deck page. So that's the first provision that they rely on and it definitely doesn't say that. The next provision they rely on is one that is on appendix 126 and that very clearly requires there to be a change in the policy itself and then the policy goes on to say we only change policies through endorsements agreed to by both parties. And then there are provisions that say as well that if we choose to enter a policy that has a interim or an estimated premium payment then you can do audits and look at the risk and then you can adjust after that but that provision specifically says it doesn't apply it only applies in policies where the declaration page specifically says that this is under that type of approach but our declaration page says the exact opposite. This insurer was 100 percent paid out for the year on the day that it was issued based on our rates and it was not one of those interim where there's audit rights and so there are no policy provisions that would provide any relief at all. And you know there's a good reason for this on this type of policy it's you know what this is a 1700 premium policy giving insurance for a year which we lived up to and would have done but all of these rating issues are right within the Director of Insurance's appropriate for the Director of Insurance to consider because it's not like auto policies where some refunds were voluntarily given and cases hold that all those are voluntary but it's a complex situation for example we even do exclusion for vacant property if their property is vacant due to COVID for two months the coverage even extinguishes. COVID presents a lot of variable risks that the Department of Insurance should think about for casualties such as is the building empty which increases risk is inventory way up which increases exposure is there a higher risk of theft which could increase the a lot of factors and so it's not this is a in our view at least the perfect case for exhaustion and I do think the Saunders case and the McLean case that which are the same case Saunders affirmed McLean where they go through and point out and this court pointed out that Missouri thoroughly regulates the business of insurance the premium is charged and the rates charged premium rates charged are governed by chapter 379 and here 379 says this case belongs in the administrative process clearly two different ways the general provisions and then specific provision that relates to a casualty policy all right thank you very much Miss Scott I believe you have a little over five minutes you may proceed thank you your honors Mr. Bennett's discussion misses one crucial point we have immediately jumped to a rate discussion this case does not allege that rates were changed at all we allege premiums should be changed as a result of these factors in fact Mr. Bennett testified some of those factors such as inventory level a vacant business etc those are the factors that think if you think back to the calculation premium equals rate times x y z factors just with Mr. Bennett's example and I will note that this is attorney testimony from Mr. Bennett we don't have any evidence that that those factors are correct but just using his hypothetical that would have caused the premium to go down we do not allege that rate which is a monetary unit applied to exposure we don't allege that change we allege that the factors just like Mr. Bennett listed change as a result of the COVID shutdown when and premiums commercial liability premiums are explicitly excluded from the Department of Insurance's review I'd also I'd also like to touch on the McLean case which as counsel said is the same as the Saunders case that case is not applicable here that case involves a challenge to homeowners insurance homeowners insurance is subject to the general statute that is subject to Department of Insurance review here commercial premiums are not so McLean has no applicability in our case I'd also like to touch on Mr. Bennett discussed a rating system that is yet one of the factors that is one of the factors the xyz factors that go into premium calculations we know that from the Missouri statute section 379.889 I'd also I'd also like to touch on Mr. Bennett's policy provision argument Mr. Bennett stated that the policy only allows premiums to be increased if there is a change never decreased however this language is absent from the policy nowhere in the policy the state farm state we will only increase the premiums we will never decrease them state farm as the drafter could have added this into its policy however it did not and we must construe this this insurance policy against the drafter and in favor of coverage your honors in my if there's no questions in my remaining minutes I would like to say there Mr. Bennett has focused a lot on things outside of this policy however all that elicits flowers is asking you to do today is to look at the terms of the policy to look at our complaint in challenging premiums and look at the terms of the policy that both parties agree to in the policy language that explicitly allows for a premium adjustment up or down in fact if the xyz factors had changed in such a way that they were increased state farm allows itself to raise the premium this is exactly the same if the factors were decreased based on the policy language if your honors don't have any other questions I will uh step down very well thank you counsel for your arguments today the case is submitted and we will strive to render a decision in due course